Okay, Mr. North. May it please the Court. Good morning, Your Honors. My name is Charles North, along with Mr. Barnes, Council Table. We represent the appellants in this matter, Cole Johnson and Cord Johnson. It would be helpful, I think, if you'd address the jurisdictional issue first. Yes, Your Honor. I would like to yield a portion of my time to Mr. Barnes for that matter. He's come prepared. Oh, so you're not here to discuss jurisdiction? I'm here to discuss the summary judgment matter, Your Honor. Okay. Mr. Barnes will answer the Court's questions regarding subject matter jurisdiction. That's fine, although he's only got three minutes. That may not be enough for that, but that's okay. Okay. Yeah, Mr. Barnes. Thank you, Your Honor. Sorry, I don't mean to scare you by taking it out of order, but jurisdiction always comes first. Understood, Your Honor. Good morning. May it please the Court. I am Stacey Barnes. I am here to address the—representing the Johnsons. I am here to address the jurisdictional issues. First off, we are, just as a preface, I'm assuming the Court is aware of kind of the strange procedural place that we are. The motion to dismiss for lack of subject matter jurisdiction was filed in December. A hearing was held a little bit earlier this year. Very recently, the Court issued an order that says, I am not going to be ruling for or against. I'm going to defer it, presumably in time. So we filed rather recently, pursuant to local rule, both to the clerk and with the Court, a designation of additional materials to be included in the record, and thus we find ourselves with the jurisdictional arguments here. What are you asking us? So what's pending? Is there a Rule 59 or Rule 60 motion pending in the District Court? As far as we can tell, yes. Yes, Your Honor. There was—it was designated in order, but it says, I am not ruling, and I will defer it later. So, whether that's later— Is there a situation where you could ask for an indicative ruling from the District Court? That would certainly be possible, Your Honor, but we had a long hearing about it, and there was positions taken by Cadence Bank that it should be properly before the Fifth Circuit and argued here. I anticipate they will come and argue with you that it should be at the District Court. Now, your view, what do you want us to do about it? Dismiss with prejudice, Your Honor. The whole case? The whole case. No subject matter jurisdiction. And that's because the principal place of business is Texas rather than Mississippi. Is that right, or am I describing it correctly? You have it exactly right, Judge Smith. But the District Court seemed to indicate more that it was probably Mississippi, right? Is that a fair reading? Whether you disagree or not, was that—is that a fair reading of what the District Court said? We disagreed. No, we don't think that was a fair reading. He said there's evidence presented on both sides. And I would urge with the Court, every piece of evidence indicates that all the officers of the bank work and live in Houston, Texas. Because that includes public filings, SEC filings. That's an evidentiary matter, and we're not used to deciding evidentiary matters, and certainly not in the first instance, right? I understand, Your Honor. However, subject matter jurisdiction, of course, is a special event. As the— If it depends on disputed facts, I mean, we're not going to have a trial. Understood, Your Honor. But as this Court recognized in Arena v. Graybar in the Supreme Court in a group of Dataflux, it may be raised for the first time at any level— Yeah, that—there's a thousand cases that say that, but are you—would it be appropriate, if there is indeed a fact issue that bears on a summary judge on a subject matter jurisdiction, for us to hold this in abeyance, send it back for a limited ruling on subject matter jurisdiction? I think we've done that in some cases. I don't know if they're exactly the same. And it returns to the same panel. It returns to the same panel, yeah. Right. That's certainly one way to handle it, Your Honor. However, the position that was taken by Cadence down below was, we should talk to you about it, and— Well, I mean, that's because we have jurisdiction. Right. Appellate jurisdiction. And the District Court no longer has jurisdiction. I understand. On pleasures of appeal. That was their position, yes. Yeah, no, I mean, that's just true, right? Right. Okay. So this question, there's the pending motion to enlarge the record by incorporating certain docket entries from the District Court. I'm trying to figure out, and this may be overly picky, but I'm trying to figure out procedurally, we generally can take judicial notice of something that's on the District Court docket. I guess I don't quite see why it matters if we enlarge the record here. Even if we were to enlarge the record, that would not necessarily mean that those docket entries would be dispositive either as to whether an issue was raised or as to what was said or done there. So tell us why or whether it really matters that we enlarge the record. Yes, Your Honor. I understand the confusion underlying the question, and we share it. The local rule says that if you want to do that, you should follow a specific procedure. We followed the procedure. But I agree with Your Honor that you can take judicial notice of the filings down below. Of course you can. So whether or not that motion is granted, I am not sure is material either. It is what it is. And these factual issues, their admissions against interest in public records, homestead exemption filings, showing every single executive, the CEO, the second tier, which includes the President, CFO, and even third-tier executives all filed their homestead exemptions in Houston. They all live in Houston. They all work in Houston. They all meet up on the top floor of the Cadence Bank building where they control and direct the affairs of the corporation, which is the Hertz Corporation test. It could not be more clear. So what does that record from the district court show as to what happens in Mississippi regarding Cadence Bank? That's an excellent question, Your Honor. I'm asking you as an officer of the court, not as an advocate. Tell us what people have said about it. They presented some evidence that there is a corporate jet so they can fly to Tupelo, what Cadence would have you believe that when Mr. Rollins has a good idea on change of policy, he calls the president of the bank and says, let's all fly to Tupelo and discuss it. But we all know that's not what happens. They office next to each other on the top floor of the Cadence Bank building, and Mr. Rollins says, Chris, why don't you come over? Am I right that this all came about as a result of a change in ownership or a merger or something like that? Exactly. There was a merger that preceded the filing of this lawsuit. They represented that it was a Tupelo bank and a Texas bank, and that the headquarters remained Tupelo, Mississippi. The extensive fact record shows that the corporate headquarters is Houston, Texas, and banking operations and back office operations remained in Tupelo, Mississippi. But all the executives down to the third tier live and work in Houston, Texas. Anything else? No, thanks. All right. Thank you, Mr. Barnes, for speaking out of order unexpectedly. Appreciate it. Thank you. So let's give Mr. North 10 minutes. Okay, Mr. North, on the merits, then. Thank you, Your Honor. Thank you for giving Mr. Barnes the opportunity to straighten some of that out as well. I appreciate that. This case is before the court today on a summary judgment motion from the district court from the Northern District of Texas. The Johnson's assertion before this court is essentially that the district court erred in granting summary judgment to the plaintiff lenders, Cadence Bank, specifically on the personal guarantee by the two Johnson brothers, essentially for two reasons. Firstly, the banks did not establish at the summary judgment phase that there was a personal guarantee at the time that they alleged default under the credit agreement, so the timing and the chronology is everything. And secondly, the district court erred because a fact issue does exist with regard to whether the Johnson's obligation under this personal guarantee were released prior to the time that the banks allege a default took place. So at the center of this argument is the personal guarantee agreement dated March 29, 2022. So that date is important. That is page 747 of the record on appeal. And at issue specifically is section 9.3 of that agreement, page 756 of the record. That is titled the release of guarantors. So the personal guarantee provision, this provision, section 9.3, provided that the Johnson's would be released from their obligations, and they are the principles of the borrower bridge link, just to put the parties in context. They would be released from their obligations under the personal guarantee if three conditions were satisfied. So the first condition is that bridge link, the borrower, was not in default under the credit agreement. Let me stop you there. Yes, Your Honor. My understanding of the record is that Cadence asserted that there were defaults, and so if that's the case, maybe you dispute that, but if that's the case, did Johnson, did your clients submit any evidence showing that there, in fact, were not defaults? Because if there were defaults, then the first condition wouldn't be met. Your Honor, it is our assertion that at the summary judgment phase, no evidence was presented of existing defaults. And in fact, going back to... So I'll ask them, is there any summary judgment evidence of existing defaults? Okay, so you say there's none. Correct, Your Honor. Going back to their original complaint, they do point out in their briefing to this court that the original complaint is referenced to, certainly the default date that is given in the original complaint as well as the summary judgment filings is December 31st, 2022, which is after satisfaction of the conditions of release in the guarantor. But even their original complaint uses vague language like, among other things, which is not sufficient to give notice and probably would not survive a 12b6 motion to dismiss for lack of specificity. But specifically, so the first condition, then, Your Honor, is that BridgeLink is not in default under the credit agreement. The second condition is probably the most important one at issue in this case. It is that for two consecutive quarters, beginning with Q1 in 2022, Cadence must have notified the Johnsons of its receipt of documents reflecting BridgeLink's compliance with the credit agreement's financial covenants. And that requires that they submit a whole string of evidence. In fact, there's 102 pages in the Johnson's surreply at the summary judgment phase containing this evidence that was submitted to the bank. And it's interesting, the way this is submitted, Your Honors, it is, it's auto-populated. The bank supplied the Johnsons with forms in the form of basically an Excel spreadsheet that they would put in numbers and all of the information required. Let me, I'm going to interrupt your sentence, excuse me. But as I understand it, the distinction, the dispute is between whether the information was supplied and received on the one hand or whether they acknowledged that they received it. Is that the issue? Your Honor, that is an issue because that is how the district court in its order chose to characterize, it's how the district court chose to characterize their understanding of the Johnsons' failure to abide by the second condition. Okay. So do you acknowledge or not that there's a requirement that the bank acknowledge receipt? Your Honor, specifically the language, well, I'll... That's actually a yes or no question. You can explain, but it is a yes or no question. Yes. There is a requirement, Your Honor, that the bank acknowledge receipt. There, there is not a requirement that the bank acknowledge, that the bank accept it. Now that, that word, that word accept, so to, to get specifically to, to the heart of the appeal, the district court, the district court states in its order, plaintiffs never accepted the certificate of compliance that was submitted for the quarter ending in September 2022. Because the certificate of compliance was not accepted as required by the terms of the release clause, defendants have failed to provide any evidence that the borrower was in compliance for two consecutive quarters. That, that's the ruling of the district court and, and, and the, the point on appeal today, Your Honor, is really that, that ruling that, that I just read to you from the district court is, is in error for, for two reasons. The first error is it's not, it's not the burden of the non-moving party at summary judgment to show compliance if lack of compliance is an element of the claim. Did you raise that argument in, at the summary judgment phase? Because I thought there's an argument by your friends on the other side that this argument has been forfeited with respect to the burden. No, Your Honor, part, part I think of, of the, of the misunderstanding and the error at the summary judgment phase is not that this argument wasn't, wasn't raised by us, but it's that, it's that the district court analyzed the burden of proof in terms of providing an affirmative defense, which, which was not really the way the summary judgment filings were. There's no evidence of that in the filings and certainly not, not at the hearing. But, but, but probably more important to the analysis is, is the second error in the district court's ruling, and that is that the terms of the release clause do not mention acceptance. The words notified appear. The words received are used. The word accept, acceptance, accept, or any form of that word is not used. So there, there is no ambiguity in Section 9.3. In your view, what, what did the guarantor have to do to comply with the condition? Merely send the information, whatever it might have been? That's enough? It doesn't require, as Judge Smith said, an acceptance, meaning, okay, we got it, we looked at it, it's, it's, everything's in order. You have satisfied. The, the specific language, Your Honor, I'll read, I'll read the, the specific language to you from 9.3. The specific, the specific language of this part of the agreement says the administrative agent, which is the bank, has notified, guarantors, that it has received evidence of compliance. Okay. So. Received evidence of compliance. Right. Notification of receipt is what is. Well, receipt of evidence of compliance. Right. And, and you, if you sent something that turns out not to be sufficient evidence of compliance, then that, that's not enough, right? Well, it, it is, it is enough, Your Honor, if we're, if we're interpreting Section 9.3 literally according to the words, I mean, they could have said acceptance. Acceptance is not part of the calculus. And in fact, even, I see I'm almost out of time, Your Honor, I'll just answer, answer the, answer your question. Even in the, even in the bank's briefing, they do say, look, Q, the second quarter was was accepted. They don't dispute that it was accepted. But it was accepted on the basis of, of an email that simply says, thank you, we will begin review tomorrow. And they characterize that as acceptance. So it's, I'm not pushing a boulder too far up the hill here, Your Honor. I think the, the, the language, the language. Contrasting the, the, the, there are two quarters at issue here. And on the one quarter, I thought the district court found there was compliance with the condition. It was the last quarter that, where the district court said there wasn't compliance with the condition. Your Honor, I'm out of time. Yeah, yeah, yeah, please. Yes. Yes. You characterized that, that exactly correctly. So we're contrasting. Q2, they admit there was compliance because the email says, thank you, we will review tomorrow. Q3, they say there's no compliance because the email simply says, thank, thank you, Susan. What's the difference? There is no difference, Your Honor. We cut you maybe a little short, and I can give you one more minute if there's anything else that you'd like to add. But if you're just going to repeat what you've already said, then you don't get the one minute. Was there anything else that you wanted to cover in your opening? You still saved your five minutes for a vote. Well, Your Honor, I appreciate that extra minute, and I'll use it just to say this. First, all three conditions were satisfied simultaneously prior to when the bank alleges default. Secondly, there is an issue, apparently, our conversation might, back and forth, might demonstrate that, Your Honor. There is an issue of material fact as to what the word received, confirmed, accept, which is a word not in the contract, what these words mean. So on that basis alone, summary judgment is not an appropriate remedy for disposition. All right. Thank you, Mr. North. Thank you, Your Honor. We'll hear from you again on rebuttal. Mr. Bradley? Good morning, Your Honors. May it please the Court? Jurisdiction first, please. Yes, Your Honor. Skipping to the jurisdictional issue, appellants have now tried to impermissibly argue a new unbriefed issue and supplement the appellate record merely a week before this oral argument. We believe this is improper for a number of reasons. We've filed a response arguing this, but I'll go ahead and reiterate them briefly. First, there was a notice of appeal that was filed that was limited to the appealing the June 17, 2024 summary judgment. You're really spending time you don't need to spend, your time and our time both, because if it's jurisdictional, we will address it. So let's not nitpick about the order in which these things happened on jurisdiction. Yes, Your Honor. But the thing is, is that there was a, we thought there was a 62.1 argument made in the district court and the district court deferred ruling on that. That is an appealable order from which the appellants have not filed a notice of appeal from. And ordinarily what would happen in my understanding of the law, it would be you file the notice of appeal from the 62.1 ruling and then you would consolidate it with this appeal and that would properly bring the jurisdictional issue before this court. Right now. The jurisdictional issue is always before us. Yes, Your Honor. And if we should determine that there was not diversity jurisdiction in the district court, then we will either dismiss it ourselves or order a dismissal. So you, you would be much better off by spending your time on telling us whether there's either, whether there's jurisdiction or whether there's a way that we can either determine it ourselves or have it determined in the district court. Yes, Your Honor. The record as it stands right now, unsupplemented, there is sufficient evidence to demonstrate diversity jurisdiction. First of all, we have alleged that, that, that Bancorp South is a Mississippi banking institution and if you will refer to the first amended credit agreement, which is in this appellate record, there is a definition that defines Bancorp South as a Mississippi banking corporation. This has been unrebutted, this has been ratified numerous times in the various credit amendments that have, that are involved in this case. And to clarify on a question that was asked earlier of appellants, there was a merger involved in this case, Your Honors, and Bancorp South merged with Cadence Bank, which was a Texas bank, but the surviving merged entity was Bancorp South, which is headquarters and has its principal place of business in Tupelo, Mississippi. And we made this argument down in the district court and provided . . . Is it irrelevant then that these officers file homestead in Texas? It is absolutely irrelevant because what's at play here is the Hertz Corporation Nerve Center Test and what that provides is, is you need to look and see where the corporate corporation's officers direct, control, and coordinate the corporation's activities. Their residences are irrelevant to that equation because it's where the decisions are actually made for the corporation. This corporation has a corporate jet policy, Your Honors, and they fly back and forth between their various offices and make these decisions. Cadence Bank has, the new merged Cadence Bank has offices in Birmingham, Alabama, where headquarters and principal place of business is in Tupelo, Mississippi, and we have one building in Houston, Texas, three floors, and it has a sign on it. But if you review the Hertz Court opinion from the United States Supreme Court, they state that that's not enough. It's actually where the decisions are made, and the evidence shows that they're trying to supplement. That's in there. It shows that the principal place of business is in Tupelo, Mississippi. What's the evidence that the decisions are made in Mississippi? There are shareholder meeting minutes that show that the decisions were made and the officers were present in Tupelo, Mississippi. That's in there. There are also a number of other documents that I can't recall at this moment that demonstrate that the decisions being made are made in Tupelo, Mississippi, Your Honor. Regarding the merged bank. Regarding the merged bank, yes, Your Honor. And so, based on the record you have before you right now, unsupplemented, there is sufficient evidence to show, by preponderance of the evidence, that there is diversity jurisdiction in this case, Your Honor. And that is why they want to try to supplement, because they don't have anything else that they can point to to show lack of diversity jurisdiction, Your Honor. Do you have any particular position on this motion to supplement? You heard what I said earlier, and if you disagree with my analysis, please say so. But it just seems to me it doesn't matter one way or the other whether we supplement the record on appeal, because we can take judicial notice of district court proceedings that occurred in the same case. Whether those proceedings are relevant to our decision is a different question, but we can take cognizance of them. But tell us whether we should or we shouldn't grant the motion to enlarge the record on appeal. Well, my first response to you, Your Honor, is they have not complied procedurally to try to, in their attempt to supplement the record. In accordance with the Fifth Circuit procedures, you mean? Yes, Your Honor. It's Local Rule 28.4, which they're relying on. That's for supplemental briefing, not supplementation of the record. And then 10.3 of the Federal Rules of Appellate Procedure does not allow for the supplementation of the record, because this information wasn't before the district court at the time that the summary judgment was granted. And so procedurally, I would say this is not the way to do it. Nevertheless, it doesn't matter, because the evidence that's in that record will clearly demonstrate that diversity jurisdiction exists because the merged Cadence Bank has a principal place of business in Tupelo, Mississippi. See if you agree with me. I see us in a kind of a dilemma. If we went ahead and decided the summary judgment issue that is before us, let's say we decided it. I don't know how we decided it, but we decided and there are further proceedings that need to take place. We send it back to the district court, and the district court then finds, oops, there's no subject matter jurisdiction, because there's no diversity. I know you disagree with that, but you see the problem? We would have decided something where there's no subject matter jurisdiction. I understand your concern, Judge Duncan, but my counter to that would be in their Rule 62.1 ruling that was issued by the district court, they're not going to make that determination, because if they meet... Who's not going to make that? The district court would not find lack of jurisdiction, subject matter jurisdiction. Well, yeah, I know you say that, and then they say... The reason why would be, Your Honor, is if they truly believe that, they would have issued an indicative ruling and requested that the case be... Did anyone ask for the district court to do that? I don't actually know the procedure. Do you have to ask for the district court to issue an indicative ruling? Yes, Your Honor. Under 62.1, there's three options, and it's a deny, it's a defer, or you have to ask for an indicative ruling. And basically, the district court would basically conclude, I suspect that there's lack of subject matter jurisdiction here. please remand the pending appeal back to the district court for an opinion on the jurisdictional issue. They did not do that. The district court did not do that. They deferred, which impliedly says that there is diversity jurisdiction here. And so, I don't believe that that is going to be the ultimate conclusion if the court decides to obey and remand for the district court to make a determination. Would you object to that? We would object to that, Your Honor. How come? Because on the same ground that I've argued here, Your Honor, that the court has basically already impliedly made that conclusion, and this would be just a further delay in this case that has been rife with delay in discovery abuse, as we outlined in our briefing. So with that, Your Honor, I would like to turn to the merits, if that's all right. I'd like to focus on the responses to the bank's summary judgment motion. As opposing counsel has mentioned, the focus of this appeal is on the personal guarantees of the Johnsons. Under Section 9.3 of the personal guarantee, they have to simultaneously meet all three elements of the personal guarantee. At the district court level, they only addressed the second element. The whole focus of their response was on these two consecutive quarters of compliance under Section 7.12. They admitted to the district court during the hearing that they had no evidence on elements one and three. That in and of itself is enough to show lack of compliance, simultaneous compliance under Section 9.3, and is enough to firm the district court's summary judgment. You can stop your analysis right there. Recognizing that this was an issue, they decided to procure new appellate counsel, and she expanded the argument and addressed all three elements. We posit that that was impermissible under this court's precedent under Tradewinds, Topelian, and various other cases that state that parties cannot advance new theories or raise new issues that were not raised in the district court to secure a reversal of a summary judgment. And that's exactly what's happened here. So just on a procedural matter, the analysis could stop right there. But to get to the merits of the issue, we say that we believe that there is absolutely enough evidence as a matter of law to establish the first element in particular. Because there are three, in the record- Existing default. Existing default, yes, your honor. There are, in the record, there are the three credit agreements in this appellate record that show a continuing default. They were basically in default from the outset, from the outset of the execution of the original credit agreement. And each credit agreement spells out numerous instances of default. And then the cherry on the top is the letter from January 27th of 2023 from Grant Cyphers, who's a senior vice president at Keynes Bank, where he lays out all of these defaults and shows that at the time of December 31st, 2022, both before and after, the Johnsons and the BridgeLink folks have been in default throughout this whole entire case. The fact that we have this evidence in the record- It has summary judgment evidence in the record, because when I asked opposing counsel about it, I thought they said that, no, this was just alluded to in a complaint. I would point you, your honor, to record site 771 through 773 is the Grant Cyphers letter. That's in there, as well as the preceding pages contain the relative, relevant credit agreements that detail the existing events of default. Did the summary judgment order from the district court reach the first condition? They did mention, the district court's opinion did mention that there was no evidence controverting the fact that there was an existing default as to the first element. So in your view, that's a separate ground for affirming? That is a separate ground for affirming, yes, your honor. And you could stop your analysis at that point and not even reach the second element and the interpretation of the contract. But should this court decide to press on and address the second element, we would argue that, first of all, this court's aware that the first, the Q1 2022 statement was not to be considered under the third amendment credit agreement. So they're relying on the Q2 and Q3 statements. And the course of dealing between these parties were or was that they would submit the documentation. The bank would say thank you and would review it. And there would be an extended period of time over several months that they would review and then send back and acknowledge you are in compliance, we can press forward. You say that happened as to Q2, is that right? We believe that it did happen to Q2. We conceded that at the trial level. They were saying, well, the response to the Q2 transmission and the Q3 are minimal, if any. What's your response? They are not equivalent, because there is a time lag between the time in which the documents are submitted and the acceptance or acknowledgement was submitted as to Q2. As to Q3, the only evidence in the record that shows Q3 compliance was thank you, Susan. An acknowledgement basically saying thank you. That's it. They said the only evidence with respect to Q2 compliance though was thank you, it's under review? It's under review, yes. But then there is a time lag that needs to be considered in there that you will see in the record. I can't recall exactly how long that was, but there was an extended time lag that basically the submission of that email is not sufficient. And the reason why I would argue that, Your Honor, is if you accept that interpretation. But it's under review has to do with making some determination about whether or not it's in compliance, is that right? That is correct. And so when you say nothing about it being under review, what should they assume? They should assume that it is under review. The bank has not made a determination of compliance at that point in time. And the reason why I say that, Your Honor- Is there some subsequent notice after review? There's usually communications. There's a plethora of emails that have been sent back and forth between the Johnsons- Is there something that says we accept you're in compliance? Yes, Your Honor. My understanding of the record, there is evidence of that in the record. Of this email back and forth and an ultimate acceptance of the documentation. And the reason why you have to go there, Your Honor, is I think the example was posed by Judge Duncan earlier. Put any information could be put in these documents and basically we're supposed to accept that and it triggers a release of the guarantee. What if it was blank? What if it had zeros in it? Well, we submitted it, that's good enough. That's clearly not what the contract contemplated and the intent behind the contract. And what they have submitted is basically indicia of compliance, but not true evidence of compliance. That determination is only made when the bank follows up and says you are in compliance. Move forward and let's move to the next quarter. And that happened with Q2? My understanding is that did happen with Q2. Can we look in the record and see that with respect to Q2? I don't know, I don't believe it's in this appellate record. Okay, all right. But we, that was a point that we can- They're saying there's a fact, as I understand their argument, they're saying summary judgment is inappropriate because there is a fact issue with respect to compliance as to Q3. I think that's the argument. I believe that is the argument, Your Honor. And we were talking about the interpretation of the contract. That's not a fact issue. It's not. That's a question of law. That's a question of law. Yes, Your Honor. That is a question of law, Your Honor. Those are two separate things. It drives me crazy, frankly, when people say there's a fact issue as to the interpretation of this contract. That's a legal issue. So we can read the contract and say what it means. The question of whether there's evidence of compliance in the record, that could be a fact issue. I don't know whether it is or not. We believe it's not. There is no fact issue because the only evidence in the record as to Q3 compliance is thank you, Susan. Thank you, Susan. Okay. And they have presented no other evidence to show. And, again, this was their affirmative defense. And to defeat the summary judgment, they have to show simultaneous compliance. That was the burden issue that I mentioned earlier. In your view, it's their burden because it's an affirmative defense. Correct. Correct. And then we believe that you could affirm this summary judgment on any one of the three elements. I have yet to hear any argument today about the third element. And the third element has a very similar analysis as to the second element as far as the compliance because all the paperwork was submitted together in one large packet. And the thank you, Susan was relevant to that issue there. And so however this court decides to resolve the second element of 9.3, the similar analysis would apply to the third element. I believe that at this point, Your Honor, because appellants have failed to present competent summary judgment evidence creating material fact issue regarding appellant's simultaneous compliance with all three elements of Section 9.3, the Appellee's Cadence Bank and Century Bank respectfully request that this court overrule all appellant's issues, deny or dismiss as moot all pending motions, and affirm the judgment of the district court summary judgment. And with that, I will cede the rest of my time. Thank you, Mr. Bradley. Mr. North for rebuttal. Excuse me. Thank you, Your Honors. May it please the Court. In order to not mischaracterize anything, Judge Keraton's order regarding the supplementing the record for the argument with respect to subject matter jurisdiction is not an appealable order because it is explicitly not a ruling. It is an order deferring ruling on defendant's motion to dismiss. But you have asked him for an indicative ruling so that at least we would have something to go on here with respect to jurisdiction. Yes, Judge Duncan. I imagine we could have. That was not asked. The motion was presented as a motion to dismiss for lack of subject matter jurisdiction. I mean, I suspect you realized he couldn't have granted that, right? Because this is on appeal. Well, Your Honor, we had discussed several possible outcomes. I mean, Rule 62 of the Federal Rules of Civil Procedure, and Judge Keraton points to that in his order, does give him several options. One of those options is simply to defer the ruling until the matter on appeal is satisfied, is disposed of. And that's the path that the district court chose to go down. But going down that path means it is explicitly. I'm not inferring it. It's explicitly an order deferring ruling. So there is no appeal that could have been taken on our part. So procedurally, we continue to assert that we did things as the federal rules and the local rules require to be done. I'm curious about Q2. Q2, you got the response that says thank you, we'll review it, or thank you, it's under review. Something along those lines. Correct, Your Honor. Did you ever get a subsequent response which said we've reviewed it, it's acceptable, we've reviewed it, you're in compliance, anything like that? Did you ever get anything like that? Your Honor, I can't point you to the exact part of the voluminous record, but even by the opposing, the bank's admission, they accepted Q2. So Q2 is not an issue. It was accepted. That doesn't answer Judge Graves' question. He asked you a specific question of whether you received something. You don't have to tell us the record page, but did you receive it or not? Your Honor, we received notification, and that's in the record, that the certificates of compliance were received by the bank. And it's our contention that that satisfies the requirements of Section 9.3 of the release of guarantors. What if I thought, reading the contract myself, which is a legal issue, that that is not the right way to read the contract? It couldn't possibly be enough simply to send in the information and say, I sent it, you received it, we're good. And I thought, no, no, what this is looking at is I send in the information, the bank reviews it, and then notifies you, yes, you're in compliance. Now, if I read it that way, which, and I'm telling you that that's how I'm inclined to read it, at least right now, you would need to receive something else from the bank in order to know that you're in compliance with respect to Q2. So you can't tell us just as a matter of fact, did your clients receive that additional communication from the bank? Regarding Q2? I understand everybody concedes that Q2 there is compliance. It is our contention that, yes, they did receive feedback that Q2 was compliant. But interestingly, Your Honor, this is a very important factual part of how this compliance is reported. And I see I have one minute left, so I'll try and get through it. There's a whole body of forms that is supplied by the bank to the borrowers. And those forms include reporting all sorts of financial metrics. Once you fill, once the guarantor has filled in those metrics, there is a box on the form that auto-populates, and it says, in compliance, yes or no, the yes box was checked. Then it's submitted to the bank. So it's sort of a — The guarantor has checked the yes box. No, no, no. You have auto-populated. The yes box — I see my time is almost up. I don't understand what you mean by auto-populated. You can go ahead and answer the question, and I'll give you one more minute. Thank you, Judge. So what happens is, once all these financial metrics are put into the forms supplied by the bank, and the record is very clear in this, they say, oh, this was not presented at the summary judgment phase. It was presented. Page 2158 to page 2258 of the record, there's 102 pages of evidence of compliance that was sent to the bank. So, yes, it was submitted. They were compliant in every area they had to be compliant. The form auto-populates the in compliance yes box gets checked once the metrics are put in. And all of that suffices to satisfy the requirements of Section 9.3. And it's on that simple basis that this summary judgment order is being appealed. So then the fact that you submitted a document in connection with Q3 is sufficient evidence that you were compliant. Because what I hear is I'm assuming all this is submitted electronically. Correct, Your Honor. You're talking about auto-populate. So upon submission, you don't get to where you can hit submit until after it said, yes, you're in compliance. Is that what you're saying? Correct, Your Honor. Because your document would be incomplete. Yes. And so then it populates, you're in compliance, and then you hit submit. Well, it's emailed, Your Honor, but yes, essentially it's submitted. No, I know you hit submit. It's electronic. Yes. You told me it's all electronic. That's correct, Your Honor. All right. So you have a form right now that would show compliance as to Q3. Yes, Your Honor, and those forms are in the record, part of the Johnson brothers' surreply at the summary judgment phase. If there's no further questions. Thank you, Your Honor. Thank you, Mr. North. Your case is under submission, and the court will be in a brief recess before hearing the final case. All rise.